T.C. Summary Opinion 2007-105


UNITED STATES TAX COURT



RICHARD THOMAS WILLIAMS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11695-05S.                    Filed June 25, 2007.


Richard Thomas Williams, pro se.

Lynn M. Curry, for respondent.



ARMEN, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

_____

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for 2003.

Respondent determined a deficiency in petitioner's Federal income tax for 2003 of $6,912 on the basis of the disallowance of an alimony deduction for payments made to petitioner's ex-wife. The sole question presented in this case is whether those payments met the definition of "alimony" under the Internal Revenue Code. We hold that the payments at issue were not alimony and consequently, we hold for respondent.

Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts and accompanying exhibits.

At the time the petition was filed, Richard Thomas Williams (petitioner) resided in Jacksonville, Florida.

Petitioner and Amy Williams (Ms. Williams or ex-wife) were married in May 1976. They separated in November 2002.

Immediately following their separation, petitioner, a retired U.S. Coast Guard (Coast Guard) officer, directed the Coast Guard Finance Center that one-half of his monthly military pension be paid to Ms. Williams.[2] The money was to cover both alimony and child support for the couple's minor child. Petitioner made these arrangements upon separating from Ms. Williams as he thought he was required to do so under the terms

_____

[2] Petitioner retired from the military in 1998 and began receiving his pension at that time.

of the Uniform Code of Military Justice (UCMJ).[3]  Under this arrangement, petitioner paid Ms. Williams $27,652.41 in 2003.

Petitioner and Ms. Williams began divorce proceedings in 2005 and entered into an official Marital Settlement Agreement (MSA) in May 2006.  The MSA, later incorporated into the final judgment of dissolution of marriage, specified that petitioner was to pay $1,080 per month, plus annual cost of living increases, to Ms. Williams as alimony.  The payments under the MSA began April 1, 2005.

Petitioner's divorce became final in July 2006.

## Discussion[4]

Section 71(a) provides the general rule that alimony payments are included in the gross income of the payee spouse; section 215(a) provides the complementary general rule that alimony payments are tax deductible by the payor spouse in "an amount equal to the alimony or separate maintenance payments paid during such individual's taxable year."

The term "alimony" means any alimony as defined in section 71, the relevant provision of which explains:

---

[3]  The Uniform Code of Military Justice can be found at 10 U.S.C. Subtit. A, Part II, ch. 47 (2001).

[4]  As the issue for decision under these facts is essentially legal in nature, we decide the instant case without regard to the burden of proof.

SEC. 71(b). Alimony or Separate Maintenance Payments Defined.--For purposes of this section--

(1) In general.--The term "alimony or separate maintenance payment" means any payment in cash if--

(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument,

(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income * * * and not allowable as a deduction under section 215,

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made, and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

Both parties agree that petitioner's payments to his ex-wife satisfied the requirements set out in section 71(b)(1)(B), (C), and (D).[5] The parties do not agree, however, whether the

_____

[5] Respondent's argument focuses on sec. 71(b)(1)(A), so we merely note--it does not impact our holding--that it seems inconsistent to concede that the divorce or separation agreement in question does not designate a payment as being excluded from the secs. 71 and 215 inclusion/deduction scheme when respondent's argument is that there is no divorce or separation agreement at

(continued...)

payments made in 2003 satisfied the requirement that alimony payments be made under a divorce or separation instrument.[6]  See sec. 71(b)(1)(A).

According to section 71(b)(2), a "divorce or separation instrument" means:

> (A) a decree of divorce or separate maintenance or a written instrument incident to such a decree,

> (B) a written separation agreement, or

> (C) a decree (not described in subparagraph (A)) requiring a spouse to make payments for the support or maintenance of the other spouse.

Respondent's position is that neither the MSA nor the final judgment of dissolution of marriage was in effect for 2003, the year at issue; therefore, the payments were not made pursuant to a divorce or separation instrument.  Petitioner argues that the UCMJ required him to make arrangements to support Ms. Williams, even in the absence of a court order or written separation agreement.  If that were the case, the UCMJ might serve to meet section 71(b)(2)(C) and function as a decree not otherwise

---

[5](...continued)
all for the year in issue.

[6]  As previously stated, petitioner paid Ms. Williams $27,652.41 in 2003 to cover both alimony and child support for the couple's minor child.  Payments to support children are not deductible.  Sec. 71(c).  Respondent does not, however, invoke that section, but argues instead that the payments in issue do not satisfy the requirement of alimony as set forth in sec. 71(b)(1)(A).

described in subparagraph (A).  But, despite his honorable intentions, petitioner cites no authority, and we are aware of none, subjecting a retired military officer receiving only a military pension to the UCMJ.[7]

At trial, we found petitioner to be very straightforward and honest; we are convinced that petitioner felt he was doing what was morally required of him.  Unfortunately, the Internal Revenue Code is very specific in its requirements, and petitioner's payments to his ex-wife in 2003 did not meet the requirement outlined in section 71(b)(1)(A).  Accordingly, we must hold that, in the instant case, petitioner's payments made to his ex-wife in 2003 did not satisfy the conditions set forth in section 71 and are thus not properly deductible as alimony for the taxable year in issue.

To reflect our disposition of the disputed issue,

<u>Decision will be entered</u>

<u>for respondent.</u>

---

[7] Similarly, petitioner cited no authority, and we are aware of none, subjecting a retired Coast Guard officer to the provisions of the Coast Guard Personnel Manual, available at http://www.uscg.mil.hq.cgpc/home/PERSMAN.pdf.